1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   IVAN DEXTER POINTER,                    No.  2:14-cv-00525-KJM-CKD

12                    Plaintiff,

13          v.                               ORDER

14   BANK OF AMERICA NATIONAL
     ASSOCIATION, BANK OF AMERICA
15   N.A., BANK OF AMERICA NATIONAL
     ASSOC., et al.,
16
                      Defendants.
17

18

19              Plaintiff Ivan Pointer moves for preliminary approval of a class settlement and for

20   provisional certification of the class.  ECF No. 38.  The motion is unopposed.  The court held a

21   hearing on September 25, 2015.  Matthew Righetti appeared for Pointer, and Regina Musolino

22   appeared for the defendants (together, BANA).  Following hearing, the court directed a

23   supplemental filing.  For the reasons described below, the motion is GRANTED.

24   I.     BACKGROUND

25              Pointer worked for BANA as a non-exempt Home Service Specialist.  In this

26   action he claims BANA had a policy to exclude bonuses when calculating overtime pay, so he

27   and similarly situated Home Service Specialists were wrongly underpaid.  First Am. Compl. ¶ 9,

28   15, ECF No. 1-1.  He also seeks penalties under the California Private Attorneys General Act

                                         1

1  (PAGA), California Labor Code §§ 2698 *et seq.*  *Id.* ¶¶ 63–66.  He proposes a class and subclass

2  defined as follows:

> All non-exempt individuals employed by BANA with the title "Home Service Specialist" or similar title in the State of California who were paid wage compensation from [BANA[1]] that included commission and/or bonus pay at any time within the four years preceding the filing of this action and continuing while this action is pending (the "Class").  And the following subclass: All members of the Class whose employment with BANA ended for waiting time penalties allegedly owed pursuant to Labor Code § 203.   (The "Waiting Time Subclass.").

8  Mot. at 1.  *See also* First Am. Compl. ¶ 27.  The parties' stipulation defines the classes in

9  different language:

> An individual is a member of the "Plaintiff Classes" (of a "Plaintiff Class Member") if he or she belongs to one or more of the following classes, both of which the parties stipulate to certification, for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:
>
> (a) the "Overtime Class," which shall include all persons, from December 10, 2009 through the date of preliminary approval of this settlement by the court ("Overtime Class Period") who (1) worked for BANA in California as an overtime-eligible home Service Specialist; (2) received a bonus payment pursuant to BANA's APIP [Associate Performance Incentive Plan] bonus plan for work performed as an overtime-eligible Home Service Specialist; (3) worked overtime during the time period covered by any bonus payment pursuant to BANA's APIP bonus plan for work performed as an overtime-eligible Home Service Specialist; and (4) has not previously signed a severance agreement and release; and
>
> (b) the "Waiting Time Penalties Class," which shall include all members of the Overtime Class whose employment terminated from December 10, 2010 through the date of preliminary approval of this settlement by the court ("Waiting Time Penalties Class Period"), and who have not previously signed a severance agreement and release.
>
> (c) An individual can be a member of both the Overtime Class and the Waiting Time Penalties Class.

24  Righetti Decl. Ex. 1 ¶ 4, ECF No. 38-2.

25     The class would comprise approximately 1,800 current and former hourly BANA

26  employees, and a few more than 800 of these persons belong to the Waiting Time Subclass.  Mot.

---

[1] The proposal uses a different acronym here, "BOFA."  *Cf.* First Am. Compl. ¶ 27.

2

1    at 9; Suppl. Righetti Decl. 2, ECF No. 45.  The parties have stipulated to the existence of a class

2    for purposes of settlement.  *Id.*; Righetti Decl. Ex. 1, ¶ 4, 23–24.  BANA has agreed to pay a total

3    of $1,750,000 to the class.  *Id.* ¶ 20.

4            Pointer filed his original complaint in Sacramento County Superior Court in late

5    2013, and the case was removed to this court in February 2014.  ECF No. 1.  The court set a

6    schedule for a hearing on a motion for class certification, ECF Nos. 13, 24, 26, but the parties first

7    reached preliminary settlement after private mediation in March 2015, ECF Nos. 34.  Other than a

8    brief discovery dispute, no other pretrial litigation has occurred.  *See* Mot. Compel, ECF No. 16;

9    Joint Stmt., ECF No. 18; Order Nov. 20, 2014, ECF No. 21.  Pointer filed the current motion for

10   preliminary approval on August 5, 2015.  ECF No. 38.

11   II.   LEGAL STANDARD

12           "Courts have long recognized that 'settlement class actions present unique due

13   process concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*

14   *(Bluetooth)*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

15   1026 (9th Cir. 1998)).  In settlement classes, the class's motivations may not perfectly square

16   with those of its attorneys.  *See id.*  An attorney representing a settlement class may be tempted to

17   accept an inferior settlement in return for a higher fee.  *Knisley v. Network Associates, Inc.*, 312

18   F.3d 1123, 1125 (9th Cir. 2002).  Likewise, defense counsel may be happy to pay his counterpart

19   a bit more if the overall deal is better for his client.  *See id.*; *see also In re Gen. Motors Corp.*

20   *Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism

21   that the settlement class "is a vehicle for collusive settlements that primarily serve the interests of

22   defendants—by granting expansive protection from law suits—and of plaintiffs' counsel—by

23   generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many

24   troublesome claims.").  In addition, if the settlement agreement is negotiated before the class is

25   certified, as it was in this case, the potential for an attorney's breach of fiduciary duty looms

26   larger still.  *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

27           To protect absent class members' due process rights, Rule 23(e) of the Federal

28   Rules of Civil Procedure permits a class action to be settled "only with the court's approval"

3

1  "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate."  Each of

2  these words must have meaning: a fair settlement treats all class members equitably; a reasonable

3  settlement has its basis in analysis; and an adequate settlement compensates class members for

4  the wrongs they suffered.  *See Bluetooth*, 654 F.3d at 946 (listing facets of the court's fairness

5  assessment and describing motivations for the court's inquiry).  When settlement is hashed out

6  before class certification, a motion for class certification "must withstand an even higher level of

7  scrutiny for evidence of collusion or other conflicts." *Id.* (citations omitted).  "Judicial review

8  must be exacting and thorough."  Manual for Complex Litigation, Fourth (MCL) § 21.61 (2004).

9        As the Ninth Circuit has recognized, however, the "governing principles may be

10  clear, but their application is painstakingly fact-specific," and the court normally stands as only a

11  spectator to the parties' bargaining. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

12  "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates

13  not only delay but also a state of uncertainty on all sides, with whatever gains were potentially

14  achieved for the putative class put at risk." *Id.*  And federal courts have long recognized "[a]

15  strong judicial policy favors settlement of class actions." *Adoma v. Univ. of Phoenix, Inc.*, 913 F.

16  Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276

17  (9th Cir. 1992)).

18        As a functional matter, a "[r]eview of a proposed class action settlement generally

19  involves two hearings."  MCL § 21.632.  First, the parties submit the proposed terms of the

20  settlement so the court can make "a preliminary fairness evaluation," and if the parties move "for

21  both class certification and settlement approval, the certification hearing and preliminary fairness

22  evaluation can usually be combined." *Id.*  Then, "[t]he judge must make a preliminary

23  determination on the fairness, reasonableness, and adequacy of the settlement terms and must

24  direct the preparation of notice of the certification, proposed settlement, and the date of the final

25  fairness hearing." *Id.*  Notification is the most important consequence of preliminary approval.

26  *See* Newberg on Class Actions (Newberg) § 13:13 (5th ed. 2011).  After the initial certification

27  and notice to the class, the court conducts a second fairness hearing before finally approving any

28  proposed settlement. *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010).

1    Here, the court undertakes the first, preliminary step only.  Rule 23 provides no

2    guidance, and actually foresees no such procedure, but federal courts have generally adopted

3    some version of the following test: "Preliminary approval of a settlement and notice to the

4    proposed class is appropriate if 'the proposed settlement appears to be the product of serious,

5    informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

6    preferential treatment to class representatives or segments of the class, and falls with the range of

7    possible approval.'"  *Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675,

8    at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

9    1079 (N.D. Cal. 2007)); *accord* Newberg § 13:13; MCL § 21.632 & n.976.

10    With these principles in mind, the court turns to Pointer's motion.

11    III.    <u>DISCUSSION</u>

12    The court first considers the propriety of a class action, then reviews the terms of

13    the parties' settlement agreement.

14    A.    <u>Class Certification</u>

15    Although the parties in this case have stipulated that a settlement class exists, the

16    court must nevertheless undertake the Rule 23 inquiry independently, both at this stage and at the

17    later fairness hearing.  *West v. Circle K Stores, Inc.*, No. 04-0438, 2006 WL 1652598, at *1–2

18    (E.D. Cal. June 13, 2006) (citing, *inter alia*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 622

19    (1997)).

20    Litigation by a class is "an exception to the usual rule" that only individually

21    named parties bring and conduct lawsuits.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.

22    Ct. 2541, 2550 (2011) (citation and internal quotation marks omitted).  To be eligible for

23    certification, the proposed class must be "precise, objective, and presently ascertainable."

24    *Williams v. Oberon Media, Inc.*, No. 09-8764, 2010 WL 8453723, at *2 (C.D. Cal. Apr. 19,

25    2010), *aff'd*, 468 F. App'x 768 (9th Cir. 2012).  The requirement is a practical one.  It is meant to

26    ensure the proposed class definition will allow the court to efficiently and objectively ascertain

27    whether a particular person is a class member, *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

28

1  267 F.R.D. 583, 592 (N.D. Cal. 2010), for example, so each putative class member can receive

2  notice, *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998).

3          If a putative class may be ascertained, it must then meet both the threshold

4  requirements of Rule 23(a) and the requirements of one of the subsections of Rule 23(b).  *Leyva*

5  *v. Medline Industries Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  Rule 23(a) imposes four

6  requirements on every class.  First, the class must be "so numerous that joinder of all members is

7  impracticable."  Fed. R. Civ. P. 23(a)(1).  Second, questions of law or fact must be common to the

8  class.  *Id.* R. 23(a)(2).  Third, the named representatives' claims or defenses must be typical of

9  those of the class.  *Id.* R. 23(a)(3).  And fourth, the representatives must "fairly and adequately

10  protect the interests of the class."  *Id.* R. 23(a)(4).

11          Here, Pointer will seek certification under Rule 23(b)(3).  *See* Mot. at 9.  Rule

12  23(b)(3) imposes two requirements in addition to those of Rule 23(a): first, "that the questions of

13  law or fact common to class members predominate over any questions affecting only individual

14  members," and second, "that a class action is superior to other available method[s] for fairly and

15  efficiently adjudicating the controversy."  The test of Rule 23(b)(3) is "far more demanding,"

16  than that of Rule 23(a).  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir.

17  2010) (quoting *Amchem*, 521 U.S. at 623–24).

18          Rule 23 applies just as well to an uncontested settlement class as to a contested

19  class that goes to trial: "Settlement, though a relevant factor, does not inevitably signal that class-

20  action certification should be granted more readily than it would be were the case to be litigated.

21  . . . [P]roposed settlement classes sometimes warrant more, not less, caution on the question of

22  certification."  *Amchem*, 521 U.S. at 620 n.16 (citation omitted).  When faced with a motion to

23  certify a settlement class, the court must pay "undiluted, even heightened, attention" to Rule 23's

24  provisions.  *Id.* at 620; s*ee, e.g.*, Randy J. Kozel & David Rosenberg, *Solving the Nuisance-Value*

25  *Settlement Problem: Mandatory Summary Judgment*, 90 Va. L. Rev. 1849, 1853 (2004) (pre-

26  CAFA article opining that "[c]lass action has come under increasing criticism by courts and

27  commentators for exacerbating the nuisance-value settlement problem—and for doing so to the

28  systematic disadvantage of defendants."); *but see* Lance P. McMillian, *The Nuisance Settlement*

6

1  *"Problem": The Elusive Truth and A Clarifying Proposal*, 31 Am. J. Trial Advoc. 221, 221

2  (2007) ("[A]ctual proof of this type of legal extortion on a large-scale basis is almost completely

3  lacking.").

4         Moreover, the approval process runs the risk of becoming a rubberstamp.  Motions

5  to certify a settlement class are generally unopposed, as is this one.  The court hears argument

6  only in favor of certification.  *See Kakani v. Oracle Corp.*, No. 06-06493, 2007 WL 1793774, at

7  *1 (N.D. Cal. June 19, 2007) ("Once the named parties reach a settlement in a purported class

8  action, they are always solidly in favor of their own proposal.  There is no advocate to critique the

9  proposal on behalf of absent class members.").  The court is often left to the plaintiff's argument

10  and its own devices.  The problem is greater at this preliminary approval stage, where objectors

11  are unlikely to have already appeared.

12         Although counsel may in good faith strive to keep the costs of preliminary

13  approval low, carefully reasoned and thorough briefing can assure the court that a class settlement

14  is appropriate.  The current motion is not a strong example of such briefing.  Pointer's substantive

15  argument reads, in its entirety,

16         The class is comprised of approximately 1,849 current and former
        hourly employees of Defendant (1,156 of which are members of the
17         "Overtime Class" and the remaining 693 are members of the
        "Waiting Time Penalties Class") and satisfies the numerosity
18         requirement.   Throughout the class period, the Defendant
        maintained a uniform policy excluding APIP bonus payments when
19         calculating the overtime rate.  As a result, the predominate [sic]
        class-wide common issue is whether Defendant's payroll
20         calculation method was correct.  The proposed class representative,
        Ivan Dexter Pointer, is a member of the class and worked for
21         Defendant during the class period.  Mr. Pointer's claims are typical
        of the other class member claims as his claims are based on the
22         same theory and facts as the other class members.  Neither Plaintiff,
        Mr. Pointer, nor class counsel possess any conflicts which would
23         prevent them from adequately representing the class.  A class action
        is the superior method for adjudicating the identical claims of the
24         class members and the common issues of law and fact applicable to
        the class predominate over any individual issues.  A class action is
25         the superior method for adjudicating the identical claims of the
        class members.

26

27  Mot. at 9.

28

1    Federal courts have not provided consistent guidance on the specific Rule 23

2  standard a plaintiff must satisfy on a motion for preliminary approval; despite the Supreme

3  Court's cautions in *Amchem*, *see* 521 U.S. at 620 n.16, a cursory approach appears the norm.  *See*

4  Newberg § 13:18 & n.10.  To look at the question of an appropriate standard from a practical

5  point of view, if a district court concludes a class may be certified, even conditionally or

6  preliminarily, and if the parties' proposed agreement is fair upon preliminary review, notice will

7  be sent to potential class members.  *See* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice in

8  a reasonable manner to all class members who would be bound by the proposal [of settlement].").

9  The danger of an incorrect decision on a motion for preliminary approval and certification is

10  therefore the risk of unnecessary or erroneous class notice: confusion and waste.  If the class is

11  eventually not certified, the previously sent notice will have been a waste, or if the class is later

12  redefined, a revised notice must be sent, which may confuse potential class members.  *Cf., e.g.*, *In*

13  *re Rail Freight Fuel Surcharge Antitrust Litig.*, 286 F.R.D. 88, 94 (D.D.C. 2012) (the risk of

14  unnecessary notice may call for a stay pending review under Rule 23(f)); *accord* Newberg

15  § 13:10 ("[S]ending notice to the class costs money and triggers the need for class members to

16  consider the settlement, actions which are wasteful if the proposed settlement is obviously

17  deficient from the outset.").  For these reasons, Pointer bears the burden of persuasion that class

18  notice will not lead to confusion or waste.

19    With these observations in mind, the court reviews each of Rule 23's

20  requirements.

21    1.    Existence of a Class

22    The proposed class and subclass consist of current and former Home Service

23  Specialists.  The parties anticipate BANA will send the claims administrator a spreadsheet listing

24  each putative class member's contact information, regular and overtime hours worked, APIP

25  payments received, and dates of employment, among other information.  *See* Righetti Decl. Ex. 1,

26  ¶ 46.  There appears no serious question that the class is precise, objective, and presently

27  ascertainable.

28

1            2.      Numerosity

2            To be certified, a class must be "so numerous that joinder of all members is

3    impracticable." Fed. R. Civ. P. 23(a)(1).  "'[I]mpracticability' does not mean 'impossibility,' but

4    only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs*

5    *Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) (quoting *Advers. Specialty Nat. Ass'n v.*

6    *FTC*, 238 F.2d 108, 119 (1st Cir. 1956)).  Although the Supreme Court has held that "[t]he

7    numerosity requirement . . . imposes no absolute limitations," *Gen. Tel. Co. of the Nw., Inc. v.*

8    *EEOC*, 446 U.S. 318, 330 (1980), courts generally find this requirement satisfied when a class

9    includes at least forty members, *Rannis v. Recchia*, 380 F. App'x. 646, 651 (9th Cir. 2010)

10   (unpublished) (citing *EEOC v. Kovacevich "5" Farms*, No. 06–165, 2007 WL 1174444, at *21

11   (E.D. Cal. Apr. 19, 2007)).  Here, the proposed class and subclass are both sufficiently numerous.

12   Joinder of the nearly 2,000 potential plaintiffs here would prove impracticable.  Much smaller

13   classes have been certified.  *See, e.g.*, *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D.

14   Cal. 2010) (collecting authority to show that classes of fewer than one hundred members may be

15   certified); *cf. Gen Tel. Co. Nw.*, 446 U.S. at 330 (a class of fifteen would be too small).

16           3.      Adequacy

17           To determine whether the named plaintiff will protect the interests of the class, the

18   court must explore two factors: (1) whether the named plaintiff and his counsel have any conflicts

19   of interest with the class as a whole, and (2) whether the named plaintiff and counsel vigorously

20   pursued the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020.  Nothing in the record here

21   suggests Pointer faces any conflict of interest with any other class members.  Likewise his

22   counsel are experienced class litigators, *see* Righetti Decl. ¶¶ 2–7, and the record reveals no

23   conflicts of interest between class counsel and the putative class.

24           4.      Commonality, Typicality, and Predominance

25           Rule 23(a) requires "questions of law or fact common to the class."  Fed. R. Civ.

26   P. 23(a)(2).  Common questions exist where putative class members suffer the same injury,

27   *Falcon*, 457 U.S. at 156, such that simultaneous litigation is productive, *Wal-Mart*, 131 S.Ct.

28   at 2551.  "This does not mean merely that [putative class members] have all suffered a violation

of the same provision of law." *Id.*  Rather, the claims "must depend on upon a common contention" the nature of which "is capable of classwide resolution." *Id.*  Common litigation must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*  Although just one common question could suffice to establish commonality, *id.* at 2556, the true inquiry is into "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation," *id.* at 2551 (emphasis in original) (citation and internal quotation marks omitted).  "Dissimilarities within the proposed class[, however,] . . . have the potential to impede the generation of common answers." *Id.* (citation and internal quotation marks omitted).

One question in this litigation is BANA's method of computing the overtime rate of pay for Home Service Specialists.  Pointer alleges BANA did not correctly calculate his regular rate of pay because it did not include in that regular rate any of the bonus payments he received under the APIP.  *See* First Am. Compl. ¶ 15; Mot. at 9; Righetti Decl. Ex. 1, ¶ 12.  This omission is significant because the minimum wage a California employer must pay for overtime work is calculated as a multiple of each employee's regular rate of pay.  *See* Cal. Lab. Code § 510(a).[2]  Whether BANA had a common, class-wide policy to calculate overtime pay rates is a common question.  Whether that method complied with California law is another.  In particular, if Pointer were to show (1) BANA had a policy to compute overtime way in a certain manner; (2) the policy applied equally to every putative class member; (3) the computation method excluded certain bonus payments from the calculation of overtime pay rates; and (4) such an

---

[2] This section provides, in relevant part,

> Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Lab. Code § 510(a).

10

1   exclusion was contrary to a specific provision of the California Labor Code or other regulation,

2   then the class as a whole could be shown to have suffered the same injury, and in one stroke,

3   BANA could face liability to each class member.

4          Answering these common questions in Pointer's favor would not conclusively

5   demonstrate BANA's liability.  Neither would common affirmative answers fix the amount of a

6   potential damages award.  The amount of overtime pay improperly withheld would depend on the

7   number of hours worked, when they were worked, and on what day.  *See id.* § 510(a).

8   Nevertheless, a policy of excluding bonus payments, if proven to exist, may "drive the resolution

9   of the litigation," *Wal-Mart*, 131 S. Ct. at 2551, despite other individualized questions, *see Leyva*,

10   716 F.3d at 514 ("[T]he presence of individualized damages cannot, by itself, defeat class

11   certification under Rule 23(b)(3)."); *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036,

12   1041 (9th Cir. 2012) (a class may be certified even though some questions of law or fact are not

13   common to the class).

14          Typicality, like commonality, acts as a guidepost "for determining whether . . . a

15   class action is economical and whether the named plaintiff's claim and the class claims are so

16   interrelated that the interests of the class members will be fairly and adequately protected in their

17   absence.'"  *Wal-Mart*, 131 S. Ct. at 2551 n.5 (quoting *Falcon*, 457 U.S. at 157–58 n.13 (1982)).

18   A court resolves the typicality inquiry by considering "whether other members have the same or

19   similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

20   and whether other class members have been injured by the same course of conduct."  *Ellis v.

21   Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (internal quotations and citation

22   omitted).  Here, the court is satisfied that should common questions exist, Pointer's claims are

23   typical of the class and subclass.  He and each class member were allegedly employed in the same

24   position at the same time.  He and each class member were allegedly subjected to the same policy

25   of underpayment.

26          After establishing typicality and the existence of common questions of law or fact,

27   Pointer must also establish that common questions "predominate over any questions affecting

28   only individual members."  Fed. R. Civ. P. 23(b)(3).  "The predominance analysis under Rule

23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir.2013) (quoting *Hanlon*, 150 F.3d at 1022). Courts are required "to take a 'close look' at whether common questions predominate over individual ones." *Comcast Corp. v. Behrend*, ___ U.S. ___, 133 S. Ct. 1426, 1432 (2013) (citations ant quotation marks omitted).

Here, Pointer's counsel explains,

> The parties engaged in formal and informal discovery and exchanges of extensive documents and information, including data regarding the sizes of the putative classes, the number of overtime hours worked, and the amount of bonus payments received under the [APIP], which was the discretionary bonus plan applied to the putative class during the relevant time period. Plaintiff took multiple depositions of BANA personnel in both Sacramento and Los Angeles.

Righetti Decl. ¶ 12. Because this explanation left the court with little assurance that BANA's policy was uniform over the class, Pointer's counsel was ordered to address the court's concerns in a supplemental declaration. *See* Order Oct. 1, 2015, ECF No. 44. Specifically, the court requested counsel explain "[w]hat evidence shows that differences between class members . . . do not give some putative class members a greater incentive to settle than others, for example because some putative class members have a stronger case than others?" *Id.* at 5. In response, counsel clarified that "[t]he sole basis of [Pointer's] overtime claim (as well as his derivative claims) is his allegations that BANA improperly treated incentive compensation as 'discretionary' instead of 'non-discretionary,' and thereby did not include such amounts in the 'regular rate of pay' when calculating overtime payments." Suppl. Righetti Decl. at 4. No other substantive allegations relate to the overtime claim. *Id.* In light of this clarification, the court is satisfied, for purposes of this motion, that BANA's policy applied equally to all putative class members. These claims must, of course, be substantiated by evidence before the class is certified.

       5.    <u>Superiority</u>

Rule 23(b)(3) has long required a court to find a class action is the "superior" method of resolution. Fed. R. Civ. P. 23(b)(3) advisory comm. notes to 1966 amendment. This

constraint should lead the court "to assess the relative advantages of alternative procedures for handling the total controversy." *Id.* Rule 23(b)(3) provides that superiority is determined by considering, for example,

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing the class action.

*Id.*; *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190–92 (9th Cir. 2001). A settlement class will not reach trial, however, so the inquiry is somewhat tempered:

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context.

*Amchem*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

The question of superiority encompasses several concerns distinct from the other requirements of Rule 23(a) and (b)(3). It contemplates the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617 (citation and internal quotation marks omitted). It considers the existence and effect of other related lawsuits, *Zinser*, 253 F.3d at 1191, and whether this court is the right forum, Fed. R. Civ. P. 23(b)(3)(C). And most basically, the court must assure itself that no realistic alternative process would better serve the class members' interests. *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996); 7A Charles A. Wright, et al., Federal Practice & Procedure § 1779 (3d ed. 2005) (individual litigation, joinder, multidistrict litigation, or an administrative or other non-judicial solution may be superior).

In his original moving papers, Pointer argued, without citation and in conclusory terms, "[a] class action is the superior method for adjudicating the identical claims of the class

1    members." Mot. at 9.  Moreover, counsel noted the pendency of another class action in state

2    court, *Pineda v. Bank of America*, which "was filed long before this action by other attorneys"

3    and "purported to settle and release the 'waiting time' claims of the class members in this case."[3]

4    *Id.* at 6.  Yet Pointer's motion made no effort to describe the effect of that case on this one in the

5    context of Rule 23(b)(3)(B).  This omission was particularly notable because the proposed

6    settlement agreement allocates payments among the Waiting Time Penalties Class according to

7    their membership in the *Pineda* class.  *See* Righetti Decl. Ex. 1, ¶ 22.

8           Counsel was ordered to submit a supplemental declaration to address the court's

9    concerns, particularly in relation to the *Pineda* case.  *See* Order Oct. 1, 2015, ECF No. 44.  In

10   response, counsel clarified the relationship between *Pineda* and this case.  Pointer's counsel is not

11   involved in *Pineda*, and was not aware of *Pineda* when this case was filed.  Suppl. Righetti Decl.

12   at 2.  During the pendency of this action, counsel learned many putative *Pineda* class members

13   were also putative members of the class and subclass of this case.  *Id.*  Based on the record

14   currently before the court, *Pineda* is still undergoing preliminary and final approval in California

15   state court.  *Id.*  BANA believes the putative *Pineda* class overlaps the putative class here, and

16   therefore the *Pineda* settlement will preclude recovery of waiting-time penalties by putative class

17   members here.  *Id.*  Therefore, counsel agreed that members of the *Pineda* class could participate

18   in both that settlement and this settlement to the extent membership in both classes would not

19   allow for double recoveries.  *Id.*  With this explanation, and having discussed the nature of this

20   case with counsel at hearing, the court is satisfied, for purposes of this motion, a class settlement

21   is the superior form of litigation.

22

23

24           [3] The California Supreme Court issued an opinion in *Pineda* on November 18, 2010,
     holding, (1) "[California Labor Code § 203(b)] sets forth a single limitations period governing all

25   actions to recover section 203 penalties regardless of whether an employee seeks both unpaid
     wages and penalties or penalties alone"; and (2) "section 203 penalties are not recoverable as

26   restitution under the UCL because employees have no ownership interest in the funds."  *Pineda v.
     Bank of Am.*, 50 Cal. 4th 1389, 1393 (2010).  The Court of Appeal's judgment was reversed and

27   remanded for further proceedings.  *Id.*

28

6.       Conclusion

The court concludes, with the benefit of its discussion with counsel at hearing and counsel's supplemental declaration, that publication of class notice is unlikely to lead to confusion or waste.

B.       Preliminary Fairness Determination

The court now considers whether the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citations and quotation marks omitted).

1.       The Proposed Settlement Agreement

Under the proposed agreement, BANA would be released from the claims alleged in the complaint, that is, claims under California state law "for alleged failure to pay straight-time of overtime wages, failure to pay all wages due upon termination, failure to timely furnish accurate itemized wage statements, engaging in unfair business practices related to the Released Claims, and for any statutory or civil penalties under any statute, ordinance, [sic] related to the Released Claims, including, without limitation, Cal. Lab. Code §§ 203, 226 and 2698, et seq." Righetti Decl. Ex. 1, ¶ 64. The release would not apply to "claims or remedies for 'off the clock' work." *Id.* BANA would owe nothing more to Pointer or the class members, but class members may participate in any settlement in the *Pineda* case. *Id.* The parties agree to cooperate and take whatever steps are necessary to obtain approval of the settlement. *Id.* ¶ 19.

The agreed $1,750,000 payment will be BANA's total payment. *Id.* ¶ 20. Attorneys' fees and costs, enhancement payments, payments to the California Labor and Workforce Development Agency, and to the settlement administrator will be deducted first. *Id.* ¶ 21. Then all claims of the Overtime Class will be paid. *See id.* ¶¶ 22, 36. Each class member will be paid the amount he or she would have received as overtime pay had BANA included APIP

bonus payments in the regular pay rate.[4]  *Id.* ¶ 36.  BANA expects that using this method, the total amount paid to Overtime Class members will be approximately $300,000.  *Id.*  Next, two-thirds of the remainder will be divided equally among Waiting Time Penalties Class members who are also class members in the state case of *Pineda v. Bank of America, N.A.*, that is, class members whose employment terminated between October 22, 2004 and June 30, 2013.  *Id.* ¶¶ 22, 37.  Whatever amount remains will then be divided equally among the rest of the Waiting Time Penalties Class members.  *Id.*  Only class members who submit signed claim forms will receive payments.  *Id*. ¶¶ 41, 50.  Unclaimed funds will first be used to pay BANA's payroll taxes attributable to the settlement payments, then distributed pro rata to the class.  *Id.* ¶ 41.  If the remainder is too small to warrant pro rata distribution, the parties propose *cy pres* distributions to a court-approved charity, ostensibly to be determined at a later date.[5]  *Id.*

The agreement foresees an application for attorneys' fees of up to $437,500, that is, 25 percent of the total $1,750,000, and actual litigation costs, which counsel estimates will not exceed $15,000.  *Id.* ¶ 30.  BANA agreed not to oppose that application.  *Id.* ¶ 30.  Pointer would receive an enhancement award of $10,000.  *Id.* ¶ 31.  The parties nonetheless "expressly agree that the Court's approval or denial of any request for attorneys' fees and costs are [*sic*] not material conditions to the Settlement Agreement, and are [*sic*] to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the Settlement."  *Id.*  "Any order or proceeding relating to the application . . . for an award of attorneys' fees and costs shall not operate to terminate or cancel" the proposed agreement.  *Id.*  The same is true of the enhancement award.  *Id.* ¶ 31.

---

[4] The settlement agreement specifies the calculation: (1) for each class member, divide the total APIP bonuses received during the class period by the number of his or her total hours worked during the class period; (2) reduce that amount by half; and (3) multiply that amount by the total number of overtime hours worked in the class period.  *Id.* ¶ 36.  Using this method, the agreement spells out an example calculation: an employee who received a $1,000 bonus and worked 1,700 hours, including 10 overtime hours, would receive ($1,000 / 1,700) (0.5) (10) = $2.94.  *Id.*

[5] In principle this strategy is acceptable, although more detail will be necessary before the court can approve the settlement finally, including about the proposed *cy pres* charity.

The class notice describes the bottom line:

| $1,750,000 | Maximum Payment |
|---|---|
| (437,500) | Plaintiffs' Attorneys' Fees |
| (15,000) | Estimated Litigation Costs |
| (10,000) | Class Representative's Enhancement Payment |
| (19,000) | Estimated Settlement Administrator's Costs |
| (15,000) | Payment to the LWDA under PAGA |
| 1,253,500 | Estimated Net Settlement Fund |

*See id.* Ex. 2, at 3. Subtracting the $300,000 BANA estimates will be paid to the Overtime Class, about $953,500 will remain to be distributed to the Waiting Time Penalties subclass. Approximately $635,333, or two thirds, will be paid to the joint-*Pineda* subclass members, and approximately $317,667, or one third, will be paid to the non-*Pineda* subclass. Counsel arrived at this division after finding joint *Pineda* subclass members comprised approximately two-thirds of the total subclass. *See* Suppl. Righetti Decl. at 2.

Rust Consulting would serve as claims administrator. Righetti Decl. Ex. 1, ¶ 32. After receiving class members' contact information and inputs for the payment calculations described above, the claims administrator will attempt to update any out-of-date addresses and begin to mail notice and claim forms, return service requested. *Id*. ¶ 47. Class members who return signed claims forms within forty-five days can participate in the settlement. *Id.* ¶ 50. Bona fide hardship may allow extensions, and class members may dispute BANA's records of their hours and APIP payments. *See id.* ¶¶ 50–51. The agreement anticipates some putative class members will elect to exclude themselves from the settlement or "opt out"; those who give notice within the same forty-five day period that they wish to be excluded will not be bound. *Id.* ¶ 52. Putative class members could also object to the settlement agreement within the same forty-five-day period. *See id.* ¶ 54.

In this case, as in most, the defendant has stipulated that a class may be certified for settlement purposes only, but it "denies it violated the law in any manner alleged in the Lawsuit," *Id.* ¶ 18, and it "does not waive, and instead expressly reserves, its rights to challenge the propriety of class certification for any purpose should the Court not approve the Settlement Agreement," *id.* ¶ 24. *See also id.* ¶ 74 ("Nothing contained herein, nor the consummation of this

1    Settlement Agreement, is to be construed or deemed an admission of liability, culpability,

2    negligence, or wrongdoing on the part of Defendant.").

3          If the court does not approve the proposed agreement, or if more than 10 percent

4    of the class or subclass opt out of the settlement, by its terms, the settlement agreement will be

5    void. *Id.* ¶¶ 69–70.

6                          2.     Fairness, Reasonableness, and Adequacy

7          As noted above, "[a]t this preliminary approval stage, the court need only

8    'determine whether the proposed settlement is within the range of possible approval.'" *Murillo*,

9    266 F.R.D. at 479 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).  Several

10   factors bear on the inquiry:

11             the strength of the plaintiffs' case; the risk, expense, complexity,
               and likely duration of further litigation; the risk of maintaining class
12             action status throughout the trial; the amount offered in settlement;
               the extent of discovery completed and the stage of the proceedings;
13             the experience and views of counsel; the presence of a
               governmental participant; and the reaction of the class members to
14             the proposed settlement.

15   *Hanlon*, 150 F.3d at 1026.  The court must also consider the value of the settlement offer and

16   whether the settlement is the result of collusion.  *City of Seattle*, 955 F.2d at 1290.

17         At the preliminary approval stage, the "initial evaluation can be made on the basis

18   of information [contained in] briefs, motions, or informal presentations by parties," MCL

19   § 21.632, and "the [c]ourt need not review the settlement in detail . . . ." *Durham v. Cont'l Cent.*

20   *Credit, Inc.*, No. 07-1763, 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing Newberg

21   § 11.25).  The court may not "'delete, modify or substitute certain provisions.'" *Hanlon*,

22   150 F.3d at 1026 (citations and quotation marks omitted).  "The settlement must stand or fall in

23   its entirety." *Id.*

24         The court finds the terms of the proposed settlement agreement to be within the

25   range of possible approval.  Several points are worth noting here.

26         First, participation in mediation "tends to support the conclusion that the

27   settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. No. 09-00261,

28   2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation omitted).  The court is reassured by

1  the fact the parties reached settlement only after participating in mediation, particularly in light of

2  BANA's readiness to oppose class certification and contest the case's merits.  The court also

3  takes judicial notice that the mediator, Mark Rudy, Esq., has mediated other class action

4  settlements, including one recently approved finally by the undersigned.  *See Ogbuehi v.*

5  *Comcast*, No. 13-00672, 2015 WL 3622999, at *9 (E.D. Cal. June 9, 2015).  However, at this

6  point the court grants only preliminary approval; before final approval may be granted, the parties

7  must submit information exchanged during their mediation for the court's in camera review.  *See*

8  *Bowling v. Pfizer, Inc.*, 143 F.R.D. 138, 140 (S.D. Ohio 1992) (ordering "an in camera

9  disclosure" of confidential information concerning "all past settlements made by the Defendants

10  involving the [device in question]"); MCL § 21.631 ("A common practice is to receive

11  information . . . in camera.").

12         Second, the parties reached settlement only after participating in both formal and

13  informal discovery.  Righetti Decl. ¶ 12.  They exchanged documents and other information, and

14  BANA personnel in Sacramento and Los Angeles were deposed.  *Id.*  The parties also litigated

15  discovery disputes before the assigned magistrate judge.  These circumstances suggest the

16  settlement was not engineered to enrich class counsel at the expense of absent class members.

17  The court cautions counsel, however, final approval will be granted only after a more detailed

18  description of the parties' discovery efforts in this case and why those efforts, without more, have

19  contributed to a fair, reasonable, and adequate settlement.

20         Third, the proposed fee award is equal to the percentage-of-recovery benchmark

21  rate, 25 percent.  *See Morales*, 2011 WL 5511767, at *12 (citing *Powers v. Eichen*, 229 F.3d

22  1249, 1256 (9th Cir. 2000)).  At this point, the court cannot express any view on the probability

23  that exactly 25 percent will be awarded, however.  This is particularly true where, as here, the

24  defendant has agreed not to oppose the fee award.  *See, e.g.*, *Bluetooth*, 654 F.3d at 942, 946–47.

25  But a run-of-the mill request at this stage inclines the court to believe nothing suspect is afoot.

26         Fourth, similarly, although "[e]nhancements for class representatives are not to be

27  given routinely," *Morales*, 2011 WL 5511767, at *12, the $10,000 enhancement award requested

28  here is not astronomical.  *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 462

1  (E.D. Cal. 2013) (collecting cases); *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No.

2  07-00362, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (collecting cases).  Nevertheless,

3  the Ninth Circuit has cautioned, "if class representatives expect routinely to receive special

4  awards in addition to their share of the recovery, they may be tempted to accept suboptimal

5  settlements at the expense of the class members whose interests they are appointed to guard."

6  *Staton*, 327 F.3d at 975 (alterations, quotation marks, and citation omitted).  At the final approval

7  stage, the court will assess whether an incentive payment is excessive by balancing, for example,

8  "the proportion of the payments relative to the settlement amount, . . . the size of the payment,"

9  "the actions the plaintiff has taken to protect the interests of the class, the degree to which the

10  class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in

11  pursuing the litigation . . . and reasonable fears of workplace retaliation."  *Id.* at 977 (citations,

12  quotation marks, and other alterations omitted).

13          Fifth, should the fees and enhancement award requested not be awarded in full, the

14  court infers from the proposed agreement that the difference will revert to settlement fund.  *See*

15  Righetti Decl Ex. 1, ¶ 30–31.  This arrangement does not suggest collusion.

16          Sixth, counsel for both parties are experienced in this type of litigation, and

17  plaintiffs' counsel believes the settlement to be fair.  *See id.* ¶¶ 3–6, 14; *Hanlon*, 150 F.3d at 1026

18  ("the experience and views of counsel" may inform the court's decision whether to approve a

19  class settlement).

20          Seventh, the court has considered the mechanism for distributing the settlement

21  funds, and finds at this stage, the procedure is reasonable and will not unfairly allocate the

22  settlement fund among the class and subclass.

23          Lastly, the court notes it has relatively little to evaluate "the strength of [Pointer's]

24  case"; "the risk, expense, complexity, and likely duration" of this litigation as compared to any

25  class action; "the risk of maintaining class action status throughout the trial"; "the amount offered

26  in settlement"; and "the reaction of the class members to the proposed settlement."  *Hanlon*, 150

27  F.3d at 1026.  The court cautions counsel final approval can be granted only if the court receives

28  more information.  "It has been remarked that the district court takes on the role of fiduciary for

1  absent class members, or that of a skeptical client, who critically examines the settlement's terms

2  and implementation." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 842–43 (E.D. La.

3  2007); *accord* Newberg 13:40; MCL § 21.61.  A putative class member may wonder what exactly

4  about this case made a trial particularly risky or costly, especially if "Plaintiff felt . . . confident

5  that the details of Defendant's discretionary bonus plan required that the bonus payments be

6  included in the regular rate," Mot. at 6; or why the settlement is far less than the amount BANA

7  suggested was at stake when the case was removed.  *See* Not. Removal at 17 (estimating the total

8  liability it faced was greater than $5 million).

9          The parties also are advised the court does not plan to maintain jurisdiction to

10  enforce the terms of the parties' settlement agreement.  *Kokkonen v. Guardian Life Ins. Co. of*

11  *Am.*, 511 U.S. 375, 381 (1994); *cf. Collins v. Thompson*, 8 F.3d 657, 659 (9th Cir. 1993).  Unless

12  some independent basis supplies this court with jurisdiction, enforcement of the agreement is for

13  the state courts.  *Kokkonen*, 511 U.S. at 382.

14          C.      Notice

15          For any class certified under Rule 23(b)(3), "the court must direct to class

16  members the best notice that is practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

17  The notice must state in plain, easily understood language:

18                  (i) the nature of the action;

19                  (ii) the definition of the class certified;

20                  (iii) the class claims, issues, or defenses;

21                  (iv) that a class member may enter an appearance through an
22                  attorney if the member so desires;

23                  (v) that the court will exclude from the class any member who
                    requests exclusion;

24                  (vi) the time and manner for requesting exclusion; and

25                  (vii) the binding effect of a class judgment on members under Rule
26                  23(c)(3).

27  *Id.*  The court has reviewed the proposed notice, Righetti Decl. Ex. 2, and finds it conforms with

28  due process and Rule 23(c)(2)(B).  The proposed notice adequately describes the terms of the

21

settlement, informs the class about the allocation of attorneys' fees, and, once completed, will provide specific and sufficient information regarding the date, time, and place of the final approval hearing. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126–27 (E.D. Cal. 2009). It informs recipients how they may object or opt out of the proposed settlement. The proposed mode of delivery, by mail, also appears appropriate in these circumstances.

IV.     CONCLUSION

The court has reviewed the proposed settlement and finds on a preliminary basis it appears to be fair and adequate. The plaintiff class also appears likely, as a preliminary matter, to meet the certification criteria of numerosity, commonality, typicality, superiority, and adequacy of representation. The court has also reviewed the proposed form of notice and the claim form and finds them to conform with due process and Federal Rule of Civil Procedure 23. Righetti Glogoski, P.C. is appointed class counsel. Ivan Dexter Pointer is appointed class representative. Rust Consulting is approved as claims administrator. The proposed settlement is preliminarily approved on a class basis. Within seven days of this date this order is filed, plaintiffs' counsel shall file a proposed order setting a final hearing schedule, which upon approval will become part of this order.

IT IS SO ORDERED.

DATED: February 20, 2016.

_____
UNITED STATES DISTRICT JUDGE